C-580-837<br>
Remand<br>
Court No. 21-00012<br>
**Public Document**<br>
E&C/OIII:  PZ

*Hyundai Steel Company v. United States,*
**Court No. 21-00012 (CIT November 9, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.     SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT), issued on November 9, 2021.[1]  These final results of redetermination concern Commerce's final results in the administrative review of the countervailing duty (CVD) order on certain cut-to-length carbon-quality steel plate (CTLP) from the Republic of Korea (Korea) covering the period January 1, 2018, through December 1, 2018.[2]  At Commerce's request, the CIT remanded to Commerce its determination to countervail the reduction for sewerage fees program.

As set forth below, Commerce has reexamined its financial contribution analysis for the reduction for sewerage fees program and has determined that the program is not countervailable. Consequently, for the purpose of these final results of redetermination, Commerce has revised the overall subsidy rate calculated for Hyundai Steel Company (Hyundai Steel) to be 0.49 percent *ad valorem*, which is *de minimis*.

---

[1] *See Order Granting Motion to Remand Case, Hyundai Steel v. United States*, Court No. 21-00012 (November 9, 2021) (*Remand Order*).
[2] *See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea:  Final Results of Countervailing Duty Administrative Review; Calendar Year 2018*, 85 FR 84296 (December 28, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

## II.   BACKGROUND

On May 2, 2019, Commerce initiated a CVD administrative review concerning imports of CTLP from Korea covering the period January 1, 2018, through December 31, 2018.[3]  On June 7, 2019, Commerce determined to examine individually Hyundai Steel as a mandatory respondent in this administrative review.[4]  In its Post-Preliminary Analysis Memo, Commerce preliminarily determined that Hyundai Steel received a countervailable subsidy benefit under the reduction for sewerage fees program through a reduced sewerage bill.[5]  In the *Final Results*, Commerce affirmed its preliminary determination.[6]  We found that Hyundai Steel received a financial contribution because its reduced sewerage bill constituted revenue forgone within the meaning of section 771(5)(D)(ii) of the Tariff Act of 1930, as amended (the Act), was specific within the meaning of section 771(5A) of the Act, and conferred a benefit within the meaning of section 771(5)(E) of the Act.[7]  We determined that Hyundai Steel had received a measurable benefit from this program.[8]  For the *Final Results*, Commerce calculated a 0.01 percent *ad valorem* rate for the reduction for sewerage fees program.[9]

Hyundai Steel filed suit at the CIT challenging Commerce's findings in the *Final Results* regarding the countervailability of the reduction for sewerage fees program.  On November 9, 2021, the CIT granted Commerce's request for a voluntary remand to reconsider our affirmative countervailability finding for the program.[10]

---

[3] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 18777 (May 2, 2019).
[4] *See* Memorandum, "Selection of Respondents for Individual Examination," dated June 7, 2019.
[5] S*ee* Memorandum, "Post-Preliminary Analysis Memorandum," dated August 6, 2020 at 2-4.
[6] *See Final Results* IDM at Comment 6.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 7.
[10] *See Remand Order*.

Subsequently, Commerce issued a supplemental questionnaire to the Government of Korea (GOK) regarding usage of the reduction of sewerage usage fees program because we did not collect certain information during the underlying review.[11] The GOK timely responded to Commerce's supplemental questionnaire.[12]

On January 14, 2022, Commerce issued Draft Remand Redetermination, reprinted with minor changes below.[13] On January 24, 2022, we received comments from Hyundai Steel[14] and Nucor Corporation (Nucor).[15] Our responses to all comments received follow the analysis section.

## III. REMANDED ISSUES

The question before the CIT was whether Commerce properly found: (i) a financial contribution from the GOK in connection with its payment of sewerage fees; (ii) a countervailable benefit from the GOK in connection with its payment of sewerage fees; and (iii) a countervailable subsidy in connection with its payment of sewerage fees. We have addressed these issues in our analysis below.

## IV. ANALYSIS

Hyundai Steel self-reported this program for the first time in this 2018 administrative review.[16] Based on the record evidence and our understanding of the program at the time of the

---

[11] *See* GOK's Letter, "Supplemental Questionnaire to the Government of the Republic of Korea," dated November 23, 2021.
[12] *See* GOK's Letter, "Response to the Supplemental Questionnaire," dated December 6, 2021 (GOK RSQR).
[13] *See* Draft Results of Redetermination Pursuant to Court Remand, Court No. 21-00012, dated January 14, 2022 (Draft Remand Redetermination).
[14] *See* Hyundai Steel's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated January 24, 2022.
[15] *See* Nucor's Letter, "Comments on Draft Results of Redetermination," dated January 24, 2022 (Nucor Comments).
[16] *See* Hyundai Steel's Letter, "Response to Initial Questionnaire," dated July 29, 2019 (Hyundai Steel IQR) at 44-45.

3

*Final Results*, Commerce found the program countervailable.[17] However, after gaining an increased understanding of how companies could receive a reduction in sewerage fees, Commerce found the program not to be countervailable in the subsequent administrative review covering the period January 1, 2019, through December 31, 2019.[18] For purposes of this final remand redetermination, we reconsider the record evidence in the 2018 administrative review, along with the information provided in the GOK's supplemental questionnaire response, in light of our increased understanding of the operation of the program.

There are both federal and municipal level laws and regulations governing this program. At the federal level, the legal basis for the collection of sewerage fees is found under Article 65(1) of the Sewerage Act and Article 36(2) of the Enforcement Decree of the Sewerage Act.[19] Article 65(1) of the Sewerage Act stipulates that regional or local governments shall set how the usage fees are calculated in their ordinances.[20]

Article 36(2) of the Enforcement Decree of the Sewerage Act states:

> When the public sewerage management authority determines the amount of the usage fee pursuant to Article 65 (1) of the Act, it shall do so based upon the amount of sewage that relevant users send down through the public sewerage system and the quality and usage pattern of the sewage within the aggregate amount of the maintenance expense for the relevant public sewerage system, depreciation costs, interest on borrowings for relevant facilities, and other expenses that incur to continue the business.[21]

At the municipal level, Articles 12, 14, and 21 of the Incheon Metropolitan City Ordinance on Sewage System Use stipulate the method for calculating the sewerage fee and any

---

[17] *See Final Results* IDM at Comment 6.
[18] *See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2019*, 87 FR 79 (January 3, 2022), and accompanying IDM at 6 (adopting without change Commerce's findings with respect to the reduction for sewerage fees program in its October 19, 2021 Post Preliminary Analysis Memorandum).
[19] *See* GOK's Letter, "Response to the Supplemental Questionnaire," dated March 25, 2020 (GOK SQR1) at 2, 5-7, and Exhibit SEWER-1.
[20] *Id.* at 6.
[21] *Id.*

4

reductions or exemptions by which the usage fee of the public sewerage system is calculated.[22] Article 9 of the Enforcement Regulation on the Incheon Metropolitan City Ordinance on Sewerage System Use covers the process under which companies apply for a reduction to their sewerage fees.[23] To qualify for this program in Incheon, companies or households must submit an application to their local government authority.[24]

Article 14(1) of the Incheon Metropolitan City Ordinance on Sewage System Use states that fees for sewerage disposed will be calculated based on the amount of water supplied to the user.[25] The GOK explains that this calculation methodology is used because users "normally do not have gauging meters installed for measuring the amount of sewerage water that they have sent down through the public sewerage system, but only have gauging meters installed for measuring the supply of clean water that they receive from the public water supply system."[26]

Hyundai Steel reported that it received a reduction of its sewerage fees in Incheon under Article 21(1)(7) of the Incheon Metropolitan City Ordinance on Sewage System Use by submitting an application for a reduction according to Article 9 of the Enforcement Decree Regulation of the same ordinance.[27] Hyundai Steel's application was accompanied by a report from Kyung Hee University that determined that Hyundai Steel's discharge into the sewerage system was less than the water supplied to Hyundai Steel.[28] Specifically, this report determined the amount of water that is vaporized when used to cool machinery and merchandise during Hyundai Steel's production process and, thus, is not discharged into the sewerage system.[29]

---

[22] *See* GOK RSQR at Exhibit IMCO.
[23] *See* GOK SQR1 at Exhibits SEWER-1 and SEWER-3.
[24] *Id.* at 9 and Exhibit SEWER-1.
[25] *Id.* at Exhibit SEWER-1.
[26] *Id.* at 2.
[27] *See* Hyundai Steel IQR at 44.
[28] *See* GOK SQR1 at 9 and Exhibit SEWER-4.
[29] *See* Hyundai Steel IQR at 45.

In the *Final Results*, we stated "the legal provisions of the Incheon Metropolitan City Ordinance on Sewerage System Use, do not explicitly provide that entities may claim a reduction in their overall water bill with regard to the amount of sewage water discharged."[30]  However, upon further reflection and with the benefit of additional record information, we now find that both federal and municipal law and regulation state that sewerage fees shall be based on the volume of sewage discharged into the public sewerage system.

As detailed above, at the federal level, Article 36(2) of the Enforcement Decree of the Sewerage Act states that, when a public sewerage management authority determines the sewerage usage fee, "it shall do so based upon the amount of sewage that relevant users send down through the public sewerage system."[31]  The Incheon Metropolitan City Ordinance on Sewerage System Use contains very similar language; Article 12(2) stipulates that the "public sewerage system fee shall be imposed and collected...based on the volume of sewerage discharged into the public sewerage system…"[32]  Because it is not possible for municipalities to measure accurately the amount of sewage discharged into the public sewerage system due to the lack of gauges discussed above, the municipalities have attempted to estimate the amount of water discharged into the sewerage systems by tying that amount to the amount of water supplied to the user.

We previously determined in the *Final Results* that the laws and regulations "do not prescribe for the situation under which Hyundai Steel qualified for its sewerage fee reduction, or the amount of the reduction received by Hyundai Steel" and that "Article 21, or any other legal provisions cited by the GOK, do not explicitly provide that entities may claim a reduction in

---

[30] *See Final Results* IDM at 20.
[31] *See* GOK SQR1 at Exhibit SEWER-1.
[32] *See* GOK RSQR at Exhibit IMCO.

their overall water bill with regard to the amount of sewage water discharged."[33]  However, the record demonstrates that Hyundai Steel applied for the reduction in Incheon under Article 21(1)(7) of the Incheon Metropolitan City Ordinance on Sewage System Use.[34]  While subparagraphs 1 through 6 of Article 21(1) reference specific circumstances under which users can qualify for a reduction, Article 21(1)(7) is a catch-all clause that states that a reduction can be granted in "{o}ther instances where the public sewerage management authority acknowledges public interest or any other special conditions."[35]  We note that the GOK provided a second translation for Article 21(1)(7) that reads:  "A person that the Management Authority determines that there are public interest or special reasons."[36]  We find that either translation can reasonably be understood to result in a catch-all clause for eligibility that does not exclude Hyundai Steel.  Further, although Article 21 does not explicitly mention eligibility for a reduction based on water discharged, we further find that eligibility for such a reduction would not be excluded under the broadly defined language of Article 21(1)(7).

Additionally, in the *Final Results*, we reasoned that "the amount of the fee reduction that Hyundai Steel received on its overall water bill significantly exceeds the rate adjustments that are specified in the ordinance, with the exception of certain special conditions, such as being located in a disaster area."[37]  The rate adjustments referenced above refer to adjustment rates specified in Appendix 4 of the Incheon Metropolitan City Ordinance on Sewage System Use.[38]  There are four different adjustment rates in this appendix:  one rate for residential users, one rate for users in disaster areas, and one rate each for users that have installed a gray water system or utilize

---

[33] *See Final Results* IDM at 20.
[34] *See* Hyundai Steel IQR at 44; *see also* GOK RSQR at 1.
[35] *See* GOK RSQR at Exhibit IMCO.
[36] *See* GOK SQR1 at Exhibit SEWER-1.
[37] *See Final Results* IDM at 20.
[38] *See* GOK RSQR at Exhibit IMCO.

7

reuse water from the public sewerage system.[39] The disaster area adjustment rate is 100 percent, while the gray water system and reuse water adjustments are both 20 percent.[40] Article 21(2) stipulates that the adjustment rates in Appendix 4 apply to subparagraphs 1-6 of Article 21(1); thus, Appendix 4 does not apply to reductions, like the one received by Hyundai Steel, granted under Article 21(1)(7).[41] Specifically, in the case of Hyundai Steel, the reduction is based on the percentage of water that a study it submitted, and the government accepted, demonstrated could not be discharged into the public sewerage system. This reduction percentage reflects the intent of the federal and municipal regulations that Hyundai Steel be billed on the amount of water discharged into the sewerage system. The reductions specified in Appendix 4 are for very specific categories of users, whether for users located in a disaster zone or those that utilize reuse water, that are not attempting to demonstrate that the amount of water discharged into the sewerage system is different that the amount of water supplied. Accordingly, it is logical that Appendix 4 only applies to the narrow categories stipulated in Articles 21(1)(1-6) and not 21(1)(7).

Finally, in the *Final Results*, we determined that "the basis under which Hyundai Steel received a sewerage fee reduction during the POR is an arrangement unique to the respondent and not otherwise contemplated under the provisions of Korean law on our record."[42] Following the receipt of further information in the GOK's recent supplemental questionnaire response, such a conclusion is no longer supported by the record. The record demonstrates that Hyundai Steel was not unique in receiving support under Article 21(1)(7). Instead, the record demonstrates that

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *See Final Results* IDM at 20.

many companies qualified for a reduction under Article 21(1)(7).[43]  Accordingly, we find that Hyundai Steel's sewerage fee reduction was not an arrangement unique to Hyundai Steel.

Further, we also do not find that the record supports a finding that the process used by Hyundai Steel to qualify for this reduction was an *ad hoc* arrangement.  Article 9 of the Enforcement Regulation on the Incheon Metropolitan City Ordinance on Sewerage System Use details the government's evaluation of applications submitted for a reduction under Article 21 of the Incheon Metropolitan City Ordinance on Sewerage System Use.[44]  In accordance with Article 9 of the enforcement regulation, Hyundai Steel submitted an application using the appropriate form with the required supporting documentation, and the government conducted a factual investigation of that application and granted its approval.

Therefore, after a reevaluation of the record, we find that the record does not support a determination that this program is countervailable.  Specifically, we determine that the record does not support a finding that the reduction in Hyundai Steel's sewerage fee in Incheon represents revenue forgone, in accordance with section 771(5)(D)(ii) of the Act.  As discussed above, both federal and municipal regulations stipulate that sewerage fees shall be set according to the amount of sewerage a user discharges into the public sewerage system.  Hyundai Steel qualified for a reduction in its sewerage bill in the amount that it demonstrated to the government that it could not have discharged into the public sewerage system.  Hyundai Steel complied with the municipal regulations by submitting an application for a reduction, citing to a subparagraph of the ordinance that does not exclude such a reduction, and providing supporting evidence, which was reviewed and accepted by the government, demonstrating that it could not have

---

[43] *See* GOK RSQR at 3.  We note that this data has comingled usage for companies that received reductions under both Article 14(3) and Article 21(1)(7) of Incheon Metropolitan City Ordinance on Sewage System Use.
[44] *See* GOK SQR1 at Exhibit SEWER-1.

discharged certain amounts of water into the sewerage system. There is no revenue forgone to the government because Hyundai Steel is simply being billed for the service for which it has used according to the regulations that govern such fees.

Because our analysis of the record and relevant Korean legal provisions demonstrates that there was no financial contribution from the GOK in connection with Hyundai Steel's reduction in sewerage fees under section 771(5)(D)(ii) of the Act, Commerce has not further evaluated the countervailability of the program in terms of specificity under section 771(5A) of the Act or benefit under section 771(5)(E) of the Act.

## V.   COMMENTS ON DRAFT REMAND REDETERMINATION

*Nucor's Comments*

- Commerce should reconsider the evidence cited in the Draft Remand Redetermination and find that the reduction in sewerage fees program is countervailable.[45]
- Article 21(1) of the Incheon Metropolitan City Ordinance on Sewage System Use merely identifies people/entities that may be eligible for a reduction in sewerage fees, but does not specify that people/entities qualifying under Article 21(1) are eligible for a reduction based on the volume of sewerage discharged. Commerce's reinterpretation of Article 21(1) in the Draft Remand Redetermination is due, in part, to differing translations of the Article 21 placed on the record at various points by the responding parties.[46]
- Article 21(1) is limited to the reduction or exemption of the public sewerage system fee (*i.e.*, a discount on the per m2 amount used). This is illustrated by the calculations provided in Appendix 4 pursuant to Article 21(2). While Appendix 4 references Article 21(1)(1-6), a per-unit reduction in the sewerage fee is consistent with Article 21(1) that explains "{t}he Management Authority may reduce or exempt the public sewerage system fee," not the volume of sewerage discharged.[47]
- Article 21(3) stipulates that "reduction and exemption procedures under Paragraph 1 shall be prescribed by the rules," and the GOK has not identified the specific rules under Article 21(1)(7) that allow for Hyundai to receive a volume reduction on its sewerage bill. The vast discrepancy in the amount of funds provided under Article 21(1)(7), which has no rules, compared to Article 21(1-6) does not appear to reflect the intent of the municipal regulations.[48]
- Commerce provided no independent analysis of the report that Hyundai Steel submitted with its application. There is no evidence that the adjustment prepared for Hyundai Steel

---

[45] *See* Nucor Comments at 3.
[46] *Id.* at 3-5.
[47] *Id.* at 5-6.
[48] *Id.* at 6-7.

- by this report represents the actual usage by Hyundai Steel for each month during the POR.[49]
- The record does not support Commerce's conclusion that Hyundai Steel was not unique in receiving support under Article 21(1)(7). The usage information provided by the GOK combined reductions granted under two different provisions, Article 14(3) and Article 21(1)(7) of the Incheon Metropolitan City Ordinance on Sewage System Use, which appears to have inflated the actual number of companies that received benefits under Article 21(1)(7). Commerce's reliance on comingled data to conclude that the subsidy was not a special arrangement is not supported by substantial evidence.[50]

*Hyundai Steel's Comments*

- Hyundai Steel fully agrees with Commerce's reconsideration of its decision in the *Final Results* to find that the reduction of sewerage fees program is not countervailable. Commerce's decision in the Draft Remand Redetermination is supported by substantial evidence and is otherwise in accordance with law.[51]

**Commerce's Position:** As detailed below, we are not persuaded by Nucor's arguments that Hyundai Steel's billed sewerage fees resulted in revenue forgone by the government in accordance with section 771(5)(D)(ii) of the Act. Rather, we continue to find that Hyundai Steel was billed in accordance with federal and municipal laws and regulations. As discussed above, Commerce has found that both Article 36(2) of the Enforcement Decree of the Sewerage Act and Article 12 of the Incheon Metropolitan City Ordinance on Sewerage System Use state that sewerage fees shall be based on the volume of sewage discharged into the public sewerage system. Nucor has not challenged this finding. The arguments made by Nucor, which are addressed below, largely relate to whether the municipal regulations allow for the reduction granted to Hyundai Steel, but as discussed below, we do not find that Hyundai Steel's reduction resulted in revenue foregone.

First, we agree with Nucor that the record contains a pair of differing translations for Article 21(1)(7) of the Incheon Metropolitan City Ordinance on Sewage System Use and that the

---

[49] *Id.* at 7-8.
[50] *Id.* at 8-10.
[51] *See* Hyundai Steel's Comments at 1-7.

11

sub-articles to Article 21(1) are concerned with eligibility for a reduction or exemption of the public sewerage system fee.[52] Accordingly, we have revised our analysis above from the Draft Remand Redetermination to clarify that Article 21(1) and its sub-articles detail which parties are eligible for a reduction or exemption, but does not detail the reduction or exemption itself. However, there is no change to our analysis because under either translation Article 21(1)(7) is a catch all clause that does not preclude the GOK from finding that a company is eligible for a reduction or exemption because it has demonstrated a variance between its water supply and water discharged into the sewer.

We disagree with Nucor that Appendix 4 provides any guidance regarding the calculation of a reduction or exemption granted to a party under Article 21(1)(7). Article 21(2) is explicit that Appendix 4 only applies to reductions or exemptions granted in relation to sub-articles 1-6 of Article 21(1).[53] The regulations have purposefully excluded Appendix 4 from applying to companies eligible for a reduction or exemption under Article 21(1)(7).

Nucor notes that Article 21(3) states that "the reduction and exemption procedures under Paragraph 1 shall be prescribed by rules," and contends that the regulation contains no prescribed rules for parties qualifying under Article 21(1)(7), unlike parties qualifying under sub-articles 1-6 of Article 21 because they must adhere to Appendix 4.[54] Nucor then argues because of the "vast discrepancy" between the amounts of the reductions granted under Article 21(1)(1-6), "where there are specific rules in place regarding the amount of subsidy that can be obtained," and Article 21(1)(7), which Nucor contends has no rules in place, the reductions/exemptions

---

[52] *See* GOK RSQR at Exhibit IMCO at Article 21(1) ("The Management Authority may reduce or exempt the public sewerage system fee, public sewerage system occupation fee and amount imposed on the causer falling under the subparagraphs:")
[53] *See* GOK RSQR at Exhibit IMCO at Article 21(1)(2) ("The reduction and exemption standards for subparagraphs 1 through 6 of Paragraph 1 shall be set forth in Appendix 4.")
[54] *See* Nucor Comments at 5-7.

12

granted under Article 21(1)(7) do not reflect the intent of the municipal regulations.[55] We do not agree. We find that the record contains substantial evidence that the reduction granted to Hyundai Steel under Article 21(1)(7) is governed by rules and is consistent with the municipal regulations. As detailed in the Draft Remand Redetermination and above in the Analysis section, Article 9 of the Enforcement Regulation on the Incheon Metropolitan City Ordinance on Sewerage System Use requires: 1) all parties that are eligible for a reduction or exemption under Article 21 of the Incheon Metropolitan City Ordinance on Sewerage System Use must submit an application using the appropriate form with the required supporting documentation; and 2) that the government conduct a factual investigation of this application and supporting documentation.[56] The record demonstrates that Hyundai Steel submitted its application using the appropriate form and the technical report from Kyung Hee University and that government officials evaluated the application and the technical report before approving such a reduction.[57] Accordingly, Commerce finds that Hyundai Steel's reduction under Article 21(1)(7) is in accordance with the rules prescribed by the municipal regulations.

We do not agree with Nucor that Commerce should be conducting an independent analysis of the technical report that Hyundai Steel submitted with its application to qualify for the reduction in sewerage fees. This report was produced in the ordinary course of business and was evaluated, including through an onsite inspection, and approved by the government's technical experts.[58] Accordingly, we find that Hyundai Steel provided the required documentation to be eligible for a reduction under Article 21(1)(7) to the GOK's satisfaction, and thus, we do not find it necessary to evaluate the technical details of the underlying report.

---

[55] *Id.*
[56] *See* Draft Remand Redetermination at 8.
[57] *See* GOK SQR1 at Exhibit SEWER-4; *see also* GOK RSQR at 2.
[58] *See* GOK RSQR at 2.

Additionally, Nucor argues that the report does not demonstrate the actual water discharged by Hyundai Steel each month and that the report is not based on data from the POR. We note that in our Draft Remand Redetermination, our analysis consistently references that the reduction of Hyundai Steel's sewerage fees was based on an analysis of water that Hyundai Steel could not have discharged into the public sewer and not that the reduction reflected the actual amount of water that Hyundai Steel discharged into the sewerage system each month.[59] We also note that, as discussed above, this reporting was acceptable to the appropriate government authorities under Article 21(7). Further, that the report was based on observations outside of the POR is understandable because the report was submitted along with Hyundai's application at the very start of the POR.

Finally, Nucor contends that Commerce's conclusion that Hyundai Steel was not unique in receiving support under Article 21(1)(7) is not supported by substantial evidence because the usage information provided by the GOK comingles usage for reductions granted under both Article 21(1)(7) and Article 14(3) of the Incheon Metropolitan City Ordinance on Sewage System Use. In the underlying review, we determined that the reduction for sewerage fees program was *de facto* specific because record evidence indicated that the basis for which Hyundai Steel qualified for a reduction in sewerage fees was not granted to any other companies. While we agree with Nucor that the usage information is comingled, the GOK's response reflects that a number of companies qualified for a fee reduction under both Article 14(3) and Article 21(1)(7).[60] Further, the companies receiving reduced bills under Article 14(3) are similar to Hyundai Steel in that they have demonstrated that the "volume of used water and the volume of

---

[59] *See* Draft Remand Redetermination at 5 and 7
[60] *See* GOK RSQR at 3-5. (The GOK notes regarding the usage data that has been comingled under Articles 14(3) and 21(1)(7) that "some companies have applied for this program based on Article 14(3)," which indicates that some companies (*i.e.*, more than just Hyundai Steel) received a reduction under 21(1)(7)).

14

discharged sewage are substantially different…"[61]  This further supports our conclusion in this remand redetermination that the arrangement for Hyundai Steel was not unique.  As noted above, we find that this program does not provide a financial contribution to Hyundai Steel because Hyundai Steel's reduction, as explained above, was granted in accordance with both federal and municipal laws and regulations, and thus, there is no revenue forgone.  As such, regardless of the commingled usage data, Commerce has not further evaluated the countervailability of the program in terms of specificity under section 771(5A) of the Act, and we continue to find the reduction for sewerage fees program not countervailable.

## VI.     FINAL RESULTS OF REDETERMINATION

Pursuant to the *Remand Order*, we have determined that the reduction for sewerage fees program is not countervailable.  If these remand results are affirmed by the Court, we intend to issue amended final results finding Hyundai Steel's subsidy rate for this POR is *de minimis*.

2/4/2022

X 

Signed by: LISA WANG

---

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

---

[61] *See* GOK RSQR at Exhibit IMCO at Article 14(3).